## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

WINSOME MARJORIE THOMPSON,

      Plaintiff,

      vs.                           No. 1:20-CV-00439-KRS

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,[1]

      Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court upon Plaintiff Winsome Marjorie Thompson's

Motion to Reverse and Remand for Payment of Benefits, or in the Alternative, for Rehearing,

with Supportive Memorandum (Doc. 20), dated February 19, 2021, challenging the

determination of the Commissioner of the Social Security Administration ("SSA") that

Thompson is not entitled to disability insurance benefits under Title II of the Social Security Act,

42 U.S.C. §§ 401-34. The Commissioner responded to Thompson's motion on May 19, 2021

(Doc. 24), and Thompson filed a reply brief on June 1, 2021 (Doc. 25). With the consent of the

parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); FED. R. CIV. P.

73(b), the Court has considered the parties' filings and has thoroughly reviewed the

administrative record. Having done so, the Court concludes that the ALJ did not err and will

therefore DENY Thompson's motion.

### I. PROCEDURAL POSTURE

On April 17, 2017, Thompson filed an initial application for disability insurance benefits.

(*See* Administrative Record ("AR") at 99). Thompson alleged that she had become disabled on

---

[1] The Acting Commissioner is substituted as the proper Defendant pursuant to FED. R. CIV. P. 25(d).

March 20, 2017, due to osteoarthritis, bulging discs, left and right shoulder tear and arthritis, depression, a replaced right knee, and a left knee needing replacement. (*Id.* at 222). Her application was denied at the initial level on November 16, 2017 (*id.* at 99), and at the reconsideration level on March 27, 2018 (*id.* at 113). Thompson requested a hearing (*id.* at 145-46), which ALJ Jeffrey N. Holappa conducted on April 3, 2019 (see *id.* at 33-72). Thompson was represented by counsel and testified at the hearing. (*Id.* at 33, 39-61). Vocational expert Juanita N. Grant (the "VE") also testified at the hearing. (*Id.* at 61-70).

On May 29, 2019, the ALJ issued his decision, finding that Thompson was not disabled under the relevant sections of the Social Security Act. (*Id.* at 15-27). Thompson requested that the Appeals Council review the ALJ's decision (*id.* at 198), and on April 7, 2020, the Appeals Council denied the request for review (*id.* at 1-3), which made the ALJ's decision the final decision of the Commissioner. On May 8, 2020, Thompson filed the complaint in this case seeking review of the Commissioner's decision. (Doc. 1).

## II. LEGAL STANDARDS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining "whether substantial evidence supports the factual findings and whether the ALJ applied the correct legal standards." *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016); *see also* 42 U.S.C. § 405(g). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *See, e.g.*, *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). Although a court must meticulously review the entire record, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See, e.g.*, *id.* (quotation omitted).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation omitted); *Langley*, 373 F.3d at 1118 (quotation omitted). Although this threshold is "not high," evidence is not substantial if it is "a mere scintilla," *Biestek*, 139 S. Ct. at 1154 (quotation omitted); "if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118; or if it "constitutes mere conclusion," *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005) (quotation omitted). Thus, the Court must examine the record as a whole, "including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan*, 399 F.3d at 1262. While an ALJ need not discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). "Failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quotation omitted).

**B.   Disability Framework**

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. §§ 404.1520, 416.920. If a finding of disability or non-disability is directed at any point,

the SSA will not proceed through the remaining steps. *Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of his impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that he is able to do despite his limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), 416.920(e), 416.945(a)(1). At step four, the claimant must prove that, based on his RFC, he is unable to perform the work he has done in the past. *See Thomas*, 540 U.S. at 25. At the final step, the burden shifts to the Commissioner to determine whether, considering the claimant's vocational factors, he is capable of performing other jobs existing in significant numbers in the national economy. *See id.*; *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

### III.  THE ALJ'S DETERMINATION

The ALJ reviewed Thompson's claim pursuant to the five-step sequential evaluation process. (AR at 16-17). First, the ALJ found that Thompson had not engaged in substantial gainful activity since her alleged onset date of March 20, 2017. (*Id.* at 17). The ALJ then found at step two that Thompson suffered from several nonsevere impairments as well as the following severe impairments: degenerative joint disease/osteoarthritis of the bilateral knees, status post right knee replacement and bilateral shoulders/left shoulder tear; status-post left bunion surgery; systemic lupus erythematosus ("SLE"); degenerative joint disease of the bilateral hands/inflammatory arthritis; left biceps tendon tear; and obesity. (*See id.* at 17-19). At step three, the ALJ concluded that Thompson did not have an impairment or combination of impairments that met the criteria of listed impairments under Appendix 1 of the SSA's regulations. (*See id.* at 19-20).

Proceeding to the next step, the ALJ reviewed the evidence of record, including opinions and evidence provided by medical sources and Thompson's own subjective symptom evidence. (*See id.* at 20-26). Based on his review of the record evidence, the ALJ concluded that Thompson possessed an RFC to perform light work with certain modifications, including allowances for frequent bilateral reaching and frequent handling, fingering, and feeling bilaterally. (*See id.* at 20).

At the end of step four, the ALJ determined that Thompson was capable of performing past relevant work as a personnel clerk. (*See id.* at 26). The ALJ therefore concluded that Thompson's work was not precluded by her RFC and that she was not disabled. (*See id.* at 26-27).

## IV.  DISCUSSION

Thompson contends that the ALJ's determinations regarding her functional limitations in reaching and manipulation and her subjective symptom evidence are unsupported by substantial evidence. (Doc. 20 at 13-24). She further argues that the ALJ failed to apply the correct legal standards in weighing the opinions of two medical sources, in discussing her functional limitations, and throughout the step-four analysis. (*See id.* at 5-26). For the reasons described herein, the Court concludes that these arguments are not well-taken.

### A.  Assessment of Dr. Altman Opinions

Thompson was treated by Alan Altman, M.D., beginning no later than February 2015 (*see* AR at 394) and continuing at least through January 2019 (*see id.* at 668). During one visit in April 2017, after evaluating Thompson's complaints of knee injury, Dr. Altman said among other things that Thompson was "okay to work. She is retired but would be okay to [perform] sedentary duty." (*Id.* at 366). The ALJ rejected this opinion as "inherently neither valuable nor

persuasive in accordance with 20 CFR 404.1520b(b)." (*Id.* at 25). In a second opinion voiced in May 2018, Dr. Altman stated in his notes that Thompson was "not able to get back to work as a medical clerk nor a human resource assistant." (AR at 656). Thompson argues that the ALJ failed to follow controlling legal principles by refusing to articulate his reasons for rejecting these two opinions from Dr. Altman. (*See* Doc. 20 at 6-8); (*see also* Doc. 25 at 2-3).[2] The Commissioner counters that these opinions were properly rejected as inherently lacking in persuasive or other value. (*See* Doc. 24 at 8-9).

Pursuant to recent revisions to SSA regulations, the agency "will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in [the] case record." *See* 20 C.F.R. § 404.1520c(b). These regulations impose certain "articulation requirements" when an ALJ considers medical opinion evidence. *See id.* But notwithstanding these general rules, the regulations also recognize certain evidence as "inherently neither valuable nor persuasive." *See* 20 C.F.R. § 404.1520b(c). This evidence includes, *inter alia*, "[s]tatements on issues reserved to the Commissioner" that, if accepted from another source, "would direct [SSA's] determination or decision that you are or are not disabled or blind within the meaning of the Act." *See* 20 C.F.R. § 404.1520b(c)(3). Examples of issues reserved to the Commissioner include "[s]tatements that you are or are not disabled, blind, able to work, or able to perform regular or continuing work," 20 C.F.R. § 404.1520b(c)(i); "[s]tatements about whether or not your residual functional capacity prevents you from doing past relevant work," 20 C.F.R. § 404.1520b(c)(3)(vi); and "[s]tatements about

---

[2] The Commissioner points out that the ALJ cited to the wrong page in the AR when relating Dr. Altman's April 2017 opinion. (*See* Doc. 24 at 9 n.7). As a result, Thompson's argument is at times focused on a different statement in the record of that visit, in which Dr. Altman described Thompson's existing work as "fairly sedentary" without offering any medical or other opinions. (*See* Doc. 20 at 6) (citing AR at 365); (Doc. 25 at 3) (citing, *e.g.*, AR at 365). Because the ALJ's decision makes clear that he was rejecting Dr. Altman's opinion that Thompson was "okay to sedentary duty" (*see* AR at 25), it is that specific rejection the Court assesses under the applicable legal standards.

what your residual functional capacity is using [SSA's] programmatic terms about the functional exertional levels in [Appendix 2 of SSA's regulations], Rule 200.00[,] instead of descriptions about your functional abilities and limitations," 20 C.F.R. § 404.1520b(c)(v). Because these types of statements are "inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, [SSA] will not provide any analysis about how [it] considered such evidence in [its] determination or decision, even under § 404.1520c." *See* 20 C.F.R. § 404.1520b(c).

The challenged statement from Dr. Altman in April 2017 provided that Thompson "would be okay to [perform] sedentary duty." (AR at 366). Rather than discussing Thompson's "functional abilities and limitations," such as her ability to remember and understand complex tasks or her ability to respond appropriately to supervisors and coworkers, this statement plainly goes towards Thompson's RFC in terms of her "functional exertional levels." *See* 20 C.F.R. § 404.1520b(c)(v). Similarly, Dr. Altman's May 2018 opinion that Thompson "is not able to get back to work as a medical clerk nor a human resource assistant" (AR at 656) constitutes a statement about whether Thompson was "able to work" or "prevent[ed] . . . from doing past relevant work." *See* 20 C.F.R. § 404.1520b(c)(3)(i), (vi). Because these kinds of statement are "inherently neither valuable nor persuasive" under SSA regulations, the ALJ was under no obligation to articulate his reasons for rejecting them under the standards set forth in 20 C.F.R. §404.1520c. *See* 20 C.F.R. § 404.1520b(c).

Thompson asserts that the ALJ must nevertheless explain his reasons for rejecting Dr. Altman's opinions on these issues reserved to the Commissioner under the "treating physician" rule, even though the SSA has repealed the regulation that codified the rule. (*See* Doc. 20 at 6-7); *see also* 20 C.F.R. § 404.1527(c)(2) (explaining typical deference to treating physicians'

opinions under prior regulation); 82 Fed. Reg. 5844-01 at 5853-54 (explaining reasons for abandoning treating-physician rule). Thompson argues that because the treating-physician rule "was originally . . . Court-created," the caselaw providing for that rule necessarily "should control in the analysis." (*See* Doc. 20 at 7) (citation omitted). However, "prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *Nat'l Cable & Telecomm'ns Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005) (citing *Chevron, USA, Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 843-44 & n.11 (1984)). Thompson has presented no developed argumentation as to why the new SSA regulations are not entitled to *Chevron* deference under this framework. At any rate, the prior regulations codifying the treating-physician rule also provided—notwithstanding that rule—that ALJs should not "give any special significance to the source of an opinion on issues reserved to the Commissioner," such as opinions on a claimant's ability to work or their residual functional capacity. *See* 20 C.F.R. § 404.1527(d)(1)-(3); *see also, e.g.*, *Terwilliger v. Comm'r, Soc. Sec. Admin.*, 801 F. App'x 614, 619, 623 (10th Cir. 2020) (unpublished) (citing *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994)) (declining to give controlling weight to treating source's opinions on issues reserved to Commissioner). Either way, the treating-physician rule has no bearing on this dispute.

Dr. Altman's opinions that Thompson could perform sedentary duty and that she could not go back to previous work were inherently neither valuable nor persuasive. *See* 20 C.F.R. § 404.1520b(c). The ALJ's decision not to articulate more detailed reasons for rejecting those opinions was not error, and remand on this basis is not warranted.

### B.  Assessment of Dr. Stermer Opinions

In a letter dated February 27, 2019, Thompson's treating physician Clifford Stermer, M.D., relayed Thompson's diagnoses of SLE, "severe osteoarthritis and multiple surgical interventions to her knees," and "biceps tendon rupture." (AR at 701). Dr. Stermer opined that the lupus diagnosis in particular was "severely limiting to her ability for employment and activities of daily living," but he did not elaborate on this assessment further. (*See id.*). The ALJ concluded that this opinion was "less persuasive" than findings from other medical sources because Dr. Stermer's opinion was "inconsistent with the claimant's treatment record," "not supported by the [findings of the] physical consultative examiner," and "vague" in that it "does not contain function-by-function work-related limitations." (*Id.* at 25). Thompson argues that the ALJ's assessment of Dr. Stermer's opinion failed to follow controlling legal standards and is unsupported by substantial evidence. (Doc. 20 at 8-13).

As previously observed, the applicable SSA regulations impose three "articulation requirements" when an ALJ considers medical opinion evidence. *See* 20 C.F.R. § 404.1520c(b). First, "when a medical source provides multiple medical opinion(s)," the ALJ need not articulate how he considered each individual medical opinion; rather, the ALJ "will articulate how [he] considered the medical opinions . . . from that medical source together in a single analysis." *Id.* § 404.1520c(b)(1). Second, while an ALJ must *consider* five factors when evaluating medical opinion evidence, *see id.* § 404.1520c(c)(1)-(5), he is generally only required to *articulate* his consideration of two of those factors: "[W]e will explain how we considered the supportability and consistency factors for a medical source's medical opinions . . . in your determination or decision." *Id.* § 404.1520c(b)(2). Finally, if differing medical opinions are equally well-

supported and consistent with the record, the ALJ must then "articulate how [he] considered the other most persuasive factors . . . for those medical opinions." *Id.* § 404.1520c(b)(3).

Regarding the supportability factor, Thompson disputes the ALJ's characterization of Dr. Stermer's notes as reflecting "mostly unremarkable physical examinations." (Doc. 20 at 9-12). To be sure, if the ALJ's statement were construed in isolation to mean that Dr. Stermer found that Thompson did not suffer from any severe impairments at all, such an assessment would be plainly erroneous. (*See, e.g.*, AR at 624) (reflecting, *e.g.*, diagnoses of SLE, osteoarthritis, and elbow pain). But "[e]xaminations which fail to reveal physical or mental functional limitations are also properly characterized as unremarkable." *Sherry Lynn F. v. Saul*, No. 20-cv-1087-JWL, 2021 WL 512223, at *5 (D. Kan. Feb. 11, 2021). And indeed, an earlier statement in the ALJ's decision clarifies his use of the term "unremarkable physical examinations":

> Her physical examinations reflect diffuse tenderness to palpation about the knee, crepitation, grinding, and that she is tender in the medial and later joint line and deep retropatellar area. However, her physical examinations are mostly unremarkable and reflect full range of motion, normal strength of the bilateral upper and lower extremities, and that the claimant ambulates with a normal gain without a limp.

(AR at 22) (citing Dr. Stermer's records and others to discuss claims of right-knee limitations); (*see also id.* at 22-23) (noting, in the context of Thompson's SLE diagnosis, that Thompson's "physical examination are mostly unremarkable, including normal gait and strength"). In this context, the question is not whether Dr. Stermer's findings reflected purportedly "unremarkable" *medical conditions*, but whether those findings reflected unremarkable *functional limitations* on Thompson's RFC—and, if so, whether there is substantial evidence to support the ALJ's determination that Dr. Stermer's medical opinions were inconsistent with those findings.

Properly understood in this context, the ALJ did not mischaracterize Dr. Stermer's findings. While Dr. Stermer did diagnose Thompson with significant medical conditions,[3] such diagnoses alone do not necessarily support a finding of functional limitations. *See, e.g.*, *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (citation omitted) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question."). Importantly, records of Dr. Stermer's physical examinations do not expressly note any functional limitations resulting from Thompson's conditions in general or from her SLE in particular. On the contrary, Dr. Stermer was initially cautious in positing that Thompson might be experiencing only "a prodrome to SLE" or "mild lupus" (*see* AR at 590), and he generally observed in subsequent discussions of her SLE diagnosis that there was "[n]o evidence of major organ system involvement" (*see id.* at 599, 615). In the most recent examination on file, Dr. Stermer also noted that despite her various musculoskeletal conditions, Thompson possessed normal range of motion in her neck and good range of motion in her shoulders. (*See id.* at 621). Viewing these records together, the description of Dr. Stermer's records as reflecting "unremarkable" functional limitations is at least fair. *See Gutierrez v. Barnhart*, 109 F. App'x 321, 325-26 (10th Cir. 2004) (unpublished) (finding that characterization of medical findings as "largely unremarkable" was "a fair one, based on the record as a whole," despite "individual instances where, for example, a particular range of motion was limited during a particular examination"). Consequently, the ALJ's determination

---

[3] Thompson cites portions of Dr. Stermer's notes relating not only his own findings, but also Thompson's subjective complaints of symptoms during her medical examinations. (*See* Doc. 20 at 9-11) (citing AR 561-63) (noting Thompson's allegations of, among other things, hand pain, back pain, and joint pain). However, these passages go less towards the ALJ's handling of Dr. Stermer's medical opinions and more to his handling of Thompson's own subjective symptom evidence (*see, e.g.*, AR at 21), which the Court addresses elsewhere.

that these records were inconsistent with Dr. Stermer's opinions concerning Thompson's employment prospects and activities of daily limiting was supported by substantial evidence.

Thompson also challenges the ALJ's finding that Dr. Stermer's opinion is inconsistent with that of the physical consultative examiner. Though Thompson initially argues that the opinions of treating physicians such as Dr. Stermer should be afforded more weight than those of consultative examiners (*see* Doc. 20 at 12) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004)), the Court again observes that the SSA's revised regulations were intended to abrogate that rule, *see, e.g.*, 82 Fed. Reg. 5844-01 at 5853-54, and Thompson has not shown why a contrary outcome is warranted, *see Brand X*, 545 U.S. at 982. Nor does Thompson's argument that Dr. Stermer's opinion was more recent than that of the consultative examiner (*see* Doc. 20 at 12) undermine the ALJ's consistency determination. To begin with, the temporal aspect of a medical source's opinions often has less bearing on the consistency of that opinion with another source's evidence,[4] for which an ALJ must articulate findings, than on the source's relationship with the claimant[5] or "other factors"[6] for which there is generally no articulation requirement. *See* 20 C.F.R. § 404.1520c(b)(2) (noting articulation requirement for supportability and consistency factors, and providing that ALJs "may, but are not required to, explain how [they] considered" other § 404.1520c(b) factors). In plainer terms, the fact that one medical opinion was rendered more recently than another may be relevant to other § 404.1520c(b) factors, but Thompson points to no authority providing that this fact must be articulated by an ALJ when

---

[4] "The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(b)(2).

[5] *See* 20 C.F.R. § 404.1520c(b)(3) (discussing consideration of, *inter alia*, the length of any treating relationship between the source and the claimant and the frequency of examinations).

[6] *See* 20 C.F.R. § 404.1520c(b)(5) ("When we consider a medical source's familiarity with the other evidence in a claim, we will also consider whether new evidence we receive after the medical source made his or her medical opinion or prior administrative medical finding makes the medical opinion or prior administrative medical finding more or less persuasive.").

addressing whether two opinions[7] are consistent with each other. *See* 20 C.F.R. § 404.1520c(c).

Moreover, while Dr. Stermer's *opinion* (AR at 700-01) was dated about 16 months after the

consultative examiner's October 28, 2017 report (*id.* at 485-90), that opinion is apparently

premised on *medical examinations* beginning just over one month later and completed within the

year following that report (*see, e.g.*, *id.* at 561-77, 618-28) (records from December 2017 through

October 2018). On this record, the Court cannot say that the relative recency of Dr. Stermer's

opinion amounts to "significantly probative evidence" that the ALJ was required to address. *See*

*Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). And without more, the Court cannot say

that the ALJ's consistency findings as to Dr. Stermer's opinions were unsupported by substantial

evidence.

Finally, Thompson pushes back on the ALJ's determination that Dr. Stermer's opinion

was "vague" in that it "does not contain function-by-function work-related limitations." (*See*

Doc. 20 at 12-13) (citing AR at 25). But the issue of a claimant's functional limitations is the

very essence of a medical opinion. *See* 20 C.F.R. § 404.1513(a)(2) (defining "medical opinion"

to mean "what you can still do despite your impairment(s) and whether you have one or more

impairment-related limitations or restrictions" in terms of, among other things, "ability to

perform physical demands"). A statement that a diagnosed condition is "severely limiting to

[one's] ability for employment and activities of daily living" (AR at 701), without explaining

*how* this is the case, gives the ALJ little to work with when assessing a claimant's RFC.[8]

---

[7] That is not to say that that temporal factors are *always* insignificant in gauging an opinion's consistency with the overall medical record under 20 C.F.R. § 404.1520c(2). For example, if one recent medical opinion is consistent with another medical source's recent opinion, but less consistent with an older opinion from a third source, the ALJ may be required to address these circumstances when articulating a consistency finding. However, Thompson does not raise such an argument with respect to Dr. Stermer's opinions. Further, the ALJ in this case found that it was the *consultative examiner's* findings that were consistent with the overall record (*see* AR at 25), and Thompson does not challenge the ALJ's weighting of that source's opinions.

[8] The Commissioner takes it a step further, arguing that the opinion under consideration was not a "medical opinion" at all, but instead amounted to a statement on issues reserved to the Commissioner. (*See* Doc. 24 at 10-11) (citing 20

The ALJ's assessment of Dr. Stermer's opinion complied with the correct legal standards and was supported by more than a "mere scintilla" of evidence. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Remand on this issue is not proper.

## C.  Findings on Functional Limitations

In making findings concerning Thompson's RFC, the ALJ concluded that Thompson was "limited to frequent bilateral reaching" and could "frequently handle, finger, and feel bilaterally." (AR at 20). Thompson contends that the ALJ's assessment of these abilities was unsupported by substantial evidence. (Doc. 20 at 13-15). The Court concludes that Thompson's position is without merit.

Regarding Thompson's manipulative abilities, the ALJ acknowledged a diagnosis of degenerative joint disease of the bilateral hands, but he noted that "[d]espite allegations of pain and difficulty using her hands, the claimant's activities of daily living involve use of her hands including independently performing personal care, watching her grandchildren, driving, and cooking." (*See* AR at 22). As the Commissioner notes, the ALJ went on to find the following:

> The claimant reported pain in her fingers and difficulty gripping. However, treatment notes do not reflect that she has any limitation in gripping, handling, feeling, or touching. Moreover, the claimant's physical examinations reflect normal findings, as discussed above. However, in consideration of the claimant's report of symptoms, the undersigned finds that she can frequently handle, finger, and feel bilaterally.

(*Id.* at 24); (*see also* Doc. 24 at 12). Further, the ALJ cited the opinion of the physical consultative examiner that Thompson could "frequently reach, handle, feel, finger, and grasp," and he determined that this opinion was persuasive. (*See* AR at 25).

---

C.F.R. § 404.1513(a)(2)). On this basis, the Commissioner suggests that the Court may summarily reject Thompson's challenge to the ALJ's weighting of Dr. Stermer's opinion since it is inherently lacking in value or persuasive power. (*Id.*) (citing 20 C.F.R. § 404.1520b(c)(3)(i)). While there is merit to the Commissioner's argument, the Court does not reach this question because the ALJ's assessment complies with the articulation requirements of § 404.1520c(b) in any case.

Although Thompson cites other medical evidence that arguably could support a finding of more significant limitations (*see* Doc. 20 at 13-15), she does not refute the aforementioned factual findings underlying the ALJ's assessment of her ability to handle, finger, and feel. The ALJ's RFC findings on these abilities are therefore supported by substantial evidence. *See Biestek*, 139 S. Ct. at 1154; *see also, e.g., Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotation omitted) ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.").

The ALJ also made several findings with respect to medical evidence concerning Thompson's reaching abilities:

> The record does not reflect that the claimant's bilateral shoulders and left shoulder tear is as limiting as she alleges. Imaging from January of 2016, prior to the alleged onset date of disability, of the claimant's right shoulder reflects "mild erosion of the AC joint" but is otherwise negative. Further imaging of her left shoulder from June of 2016, reveals mild degenerative changes of the acromioclavicular joint, partial thickness tearing, and high grade articular surface tearing of the distal supraspinatus tendon. Treatment notes reflect that the claimant used physical therapy to try to treat her shoulder pain, as well as an injection, which "helped somewhat." Her physical examinations reflect good range of motion of the shoulders and normal strength. . . .

> The record does not reflect that the claimant's left bicep tear is as limiting as she alleges. The claimant reported experiencing pain in her bicep, which she thought might be from her medication. Her doctor initially prescribed a muscle relaxer and physical therapy. However, by December of 2018, she denied experiencing ongoing pain relief with physical therapy and reported that her physical therapist recommended medication. Treatment notes reflect limited range of motion due to pain, but that the claimant "can push to full range of motion." Imaging from January of 2019, shows a bicep tear and her provider referred her to an orthopedist for further evaluation. However, treatment notes reflect generally normal findings, including normal strength of the bilateral lower and upper extremities, with full range of motion. . . .

> Imaging shows mild changes of her shoulders, which her providers treat conservatively. In consideration of the claimant's imaging, the undersigned has limited her to frequent bilateral reaching.

15

(AR at 22, 24) (internal citations omitted). Again, while Thompson cites other aspects of the medical record, she does not deny that the factual findings described by the ALJ also find support in the medical record. (*See id.*); (*see also id.* at 25) (declaring persuasive the physical consultative examiner's finding that, among other things, Thompson could "frequently reach"). Without more, the ALJ's determination as to Thompson's ability to reach are supported by substantial evidence. *See, e.g.*, *Biestek*, 139 S. Ct. at 1154; *Lax*, 489 F.3d at 1084 (quotation omitted).

Thompson does not refute the Commissioner's argument that "no medical source opined to a greater degree of limitation" than that found by the ALJ (*see* Doc. 24 at 12), but she cites *Chapo* for the apparent proposition the ALJ should have assigned greater limitations anyway. (*See* Doc. 25 at 6) (quoting *Chapo*, 682 F.3d at 1288) ("[T]he ALJ, not a physician, is charged with determining a claimant's RFC from the medical record."). But *Chapo* holds nothing of the sort. While that decision makes clear that an ALJ may make an RFC finding concerning a particular functional ability even in the absence of "specific, affirmative, medical evidence on the record" as to that ability, *see* 682 F.3d at 1288-89 (citing, *e.g.*, *Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)), this does not mean that an ALJ may *ignore* substantial evidence in the medical record that goes directly to the functional ability at issue. Here, for example, the ALJ cited the physical consultative examiner's findings that Thompson could "frequently reach, handle, feel, finger, and grasp" (AR at 25) (citing AR at 490) in reaching the same conclusion as to Thompson's functional limitations (*id.* at 20). In this context, the fact that "no medical source opined to a greater degree of limitation" is not, as Thompson implies, an "absence of evidence" in support of the ALJ's findings (*see* Doc. 25 at 6); rather, it is an absence of support for the proposition that the ALJ's findings were unsupported by substantial evidence.

In her reply brief, Thompson argues that the ALJ should not have relied on opinions from the consultative examiner in reaching his RFC findings. (Doc. 25 at 6-7). To the extent Thompson is contending that the ALJ committed legal error in evaluating the supportability, consistency, and other § 404.1520c(c) factors as they pertained to the consultative examiner's opinion, she has waived that argument by raising it for the first time in her reply brief. *See, e.g., United States v. Redcorn*, 528 F.3d 727, 738 n.4 (10th Cir. 2008) (explaining general rule that argument raised for first time in reply brief is deemed abandoned or waived). To the extent Thompson otherwise argues that the ALJ should have found the consultative examiner's opinion to be less persuasive than other record evidence, substantial-evidence review forecloses such a ruling. *See, e.g.*, *Lax*, 489 F.3d at 1084 (quotation omitted) (holding that a reviewing court may not "displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo"). Finally, even if the Court were to wholly ignore the consultative examiner's findings, the ALJ also cited other medical evidence of record in determining Thompson's RFC for reaching, handling, fingering, and feeling. (*See* AR at 22-23, 25). That is enough to find that substantial evidence supports the ALJ's conclusions. *See, e.g.*, *Biestek*, 139 S. Ct. at 1154.

Because the ALJ's findings on the specified functional abilities were supported by substantial evidence and followed governing legal standards, remand on this basis is unwarranted.

### D.   Subjective Symptom Evidence

The ALJ, having reviewed the record evidence, determined that Thompson's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (AR at 21). Thompson

challenges this determination, primarily attacking the ALJ's alleged failure to adhere to controlling legal standards. (*See* Doc. 20 at 15-24). The Commissioner, characterizing Thompson's arguments as "nit-pick[ing]" and "an impermissible request that this Court reweigh the evidence," argues that the ALJ's determination is entitled to deference and was supported by substantial evidence. (Doc. 24 at 12-14).

The assessment of subjective symptom evidence is a two-step process, requiring the ALJ to first determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his alleged symptoms. *See* SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016).[9] If so, the ALJ must then evaluate the intensity and persistence of the claimant's symptoms and determine the extent to which his symptoms limit his ability to perform work-related activities. See *id.* at *4. In doing so, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.*; *see also* id. at *4-7 (elaborating on factors to consider); 20 C.F.R. § 404.1529(c) (same).

An ALJ's subjective symptom evaluations "warrant particular deference." *White v. Barnhart*, 287 F.3d 903, 910 (10th Cir. 2002). Still, such "deference is not an absolute rule." *See Kellams v. Berryhill*, 696 F. App'x 909, 917 (10th Cir. 2017) (unpublished) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)). In evaluating a claimant's subjective symptom evidence and other matters, an ALJ must discuss not only "the evidence supporting his

---

[9] SSRs are binding on the SSA, and while they do not have the force of law, courts traditionally defer to SSRs since they constitute the agency's interpretation of its own regulations and foundational statutes. *See Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990); 20 C.F.R. § 402.35; *see also Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (SSRs entitled to deference).

decision," but also "the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton*, 79 F.3d at 1009-10. Along these lines, "[i]t is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence." *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted). Likewise, an ALJ is not permitted to "mischaracterize or downplay evidence to support her findings." *Bryant v. Comm'r, SSA*, 753 F. App'x 637, 641 (10th Cir. 2018) (unpublished) (citing *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987)).

Citing records from multiple providers, Thompson first argues that the ALJ's characterization of her physical examinations as "mostly unremarkable" when assessing her subjective symptoms was a misrepresentation of the evidence. (AR at 16-22). This is, in some respects, a broader version of her argument concerning the ALJ's handling of Dr. Stermer's evidence discussed *supra*, only this time directed at the findings of multiple medical sources. (*See id.*). Again, however, the findings cited by Thompson are framed primarily in terms of *diagnoses* rather than in terms of *functional limitations*, and the framing of medical source evidence as "mostly unremarkable" is not error if the medical sources do not describe significant functional limitations resulting from the claimant's diagnoses. *See Sherry Lynn F.*, 2021 WL 512223, at *5. As the ALJ stated, Thompson's providers note in several places "that [she] has normal strength of her bilateral upper and lower extremities, full range of motion, has a normal gait, and walks without a limp." (AR 21) (citing AR at 331, 355, 360, 362, 525, 547, 579-80, 685). Although Thompson highlights that she was diagnosed with severe degenerative impairment of both knees (Doc. 20 at 16)—a point that the ALJ expressly recognized at step two in finding that condition to be a severe impairment (*see* AR at 17)—she generally does not cite

any description of *functional limitations* from any medical source that undermines the ALJ's summary of those source's findings as to her limitations.

Indeed, in a multipage chart primarily describing diagnoses and subjective reports (*see* Doc. 20 at 17-20), Thompson cites only two discussions of functional limitations by her providers, neither of which are "significantly probative" or obviously inconsistent with the ALJ's assessment of the evidence. *Cf. Clifton*, 79 F.3d at 1010. First, Thompson claims that one provider noted "[o]bjective findings of decreased muscle strength in the bilateral lower limbs" (*id.* at 20). In fact, the provider stated that Thompson's lower-limb muscle strength was "grossly > [greater than] 4/5" – that is, almost (if not quite) full strength. (*See* AR at 630). Second, while Thompson is not incorrect in noting that Dr. Altman found some hamstring movement "limited by pain" (*see* Doc. 20 at 18), Dr. Altman ultimately concluded that Thompson possessed a range of motion of 0 to 120 in the right knee and -5 to 120 in the left knee (AR at 362, 365-66). At the very least, the ALJ's description of these and other findings as "mostly unremarkable" was "a fair one, based on the record as a whole," despite "individual instances where, for example, a particular range of motion was limited during a particular examination." *Gutierrez*, 109 F. App'x at 325-26.

Thompson further contends that the ALJ misrepresented the seriousness of her spinal canal narrowing by "incorrect[ly]" describing that condition as "mild." (Doc. 20 at 16). More specifically, Thompson argues that "x-rays showed not mild, but mild to moderate spinal canal narrowing and neural foraminal narrowing," citing a December 2016 x-ray in support. (*Id.*) (citing AR at 307). However, Thompson is herself misrepresenting both the medical record and the ALJ's findings. The ALJ properly cited and discussed the December 2016 imaging— conducted prior to the alleged onset date—and accurately described it as "reflect[ing] multilevel

disc and facet degenerative changes of the lumbar spine." (AR at 21). But the ALJ also discussed "[u]pdated" imaging from March 2018 that did, in fact, show "mild disc space narrowing at L2-L3." (*See id.*) (quoting AR at 584). This discussion, taken as a whole, does not reflect that the ALJ impermissibly mischaracterized the record or failed to discuss the evidence that Thompson cites. And to the extent that Thompson suggests that the Court should rule that the ALJ should have relied more strongly on the older imaging results than on the more recent results, such a ruling would exceed the Court's authority on substantial-evidence review. *See, e.g.*, *Lax*, 489 F.3d at 1084 (quotation omitted).

Similarly, Thompson argues that the ALJ ignored evidence that she was scheduled for *right-knee* surgery (*see* Doc. 20 at 21), contrasting the ALJ's statement that "the record does not reflect . . . that she has been scheduled for surgery" (AR at 22) with a "Surgery Information" sheet showing a right-knee arthroplasty scheduled for April 2019 (*id.* at 681). Again, however, Thompson has misrepresented the ALJ's findings. The ALJ's statement regarding Thompson's lack of surgery was made in a paragraph specifically discussing limitations of her *left* knee,[10] as the context of his findings makes clear:

> The claimant testified that she is going to receive surgery *on her left knee* in approximately six months. However, the record does not reflect treatment notes indicating that she has been scheduled for surgery.

(AR at 22) (emphasis added). Because Thompson does not point to any treatment notes reflecting that she was ever scheduled for surgery of her left knee, the Court cannot conclude that the ALJ's statement regarding lack of evidence for that surgery was incorrect or amounted to a misrepresentation of the record.

---

[10] The ALJ's discussion of Thompson's *right* knee limitations—in an entirely separate paragraph devoted to the subject—does not assert a lack of evidence that this surgery was scheduled. (*See* AR at 22). The ALJ does accurately note, however, that there was no record of the procedure itself in the administrative record. (*See id.*).

Thompson broadly asserts that the ALJ "failed to address" the aforementioned evidence she has cited. (*See* Doc. 20 at 21). As has already been shown, this is not wholly correct, since the ALJ described much of that evidence in reviewing her subjective symptoms. To the extent that the ALJ did not discuss each piece of evidence Thompson cites, she has not shown that the evidence in question was "significantly probative," that the evidence was inconsistent with the ALJ's determination concerning the intensity, persistence, and limiting effects of her symptoms, or that the ALJ actually rejected any of the providers' findings on those matters. *Cf. Clifton*, 79 F.3d at 1009-10. And even to the extent that the evidence in question could be read as "fully support[ing]" Thompson's claim of disability as she alleges (*see* Doc. 20 at 20-21), she has not shown that the ALJ's contrary finding was unsupported by substantial evidence. *See Lax*, 489 F.3d at 1084.

Thompson's remaining arguments attacking the ALJ's subjective symptom assessment may be addressed more briefly. First, Thompson alleges that the ALJ improperly relied on her lack of inpatient hospitalization and emergency department treatment when evaluating her symptoms. (*See* Doc. 20 at 22) ("The ALJ has cited to no regulatory or other requirement that a claimant have been hospitalized in order to be found disabled."). But an ALJ may properly consider the nature and extent of medical treatment (or lack thereof), including hospitalization, when reaching findings on the intensity, persistence, and limiting effects of a claimant's subjective symptoms. *See, e.g.*, *Newbold v. Colvin*, 718 F.3d 1257, 1267-68 (10th Cir. 2013) (affirming ALJ findings concerning claimant's "subjective complaints of extreme limitations" supported by, among other things, lack of hospitalization). While the absence of hospitalization, standing alone, might not suffice to discount a claimant's subjective symptom evidence, the ALJ did not commit legal error by citing this fact in the context of his other findings.

Second, citing the ALJ's determination that her degenerative joint disease and arthritis of the bilateral knees was not "as limiting as she alleges," Thompson contends that the ALJ inappropriately minimized her subjective reports of pain because she did not "prove the amount of pain she suffers." (Doc. 20 at 23) (citing AR at 21). But the ALJ did not conclude that Thompson's "amount of pain [was not] supported by objective findings" as Thompson argues (*see id.*); rather, the ALJ determined that the medical evidence showed that Thompson's knee pain was somewhat controlled by medication and other conservative treatment (*see* AR at 21-22) before ultimately restricting her to light work with additional restrictions (*see id.*). The ALJ's findings were consistent with his duty to determine whether, "considering all the evidence, both objective and subjective, [the] Claimant's pain [was] in fact disabling." *Kepler v. Chater*, 68 F.3d 387, 390 (10th Cir. 1995) (quoting *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)). While Thompson cites other evidence that another factfinder might construe as supporting the argument that her arthritis and other pain is in fact disabling (*see* Doc. 20 at 23); (Doc. 25 at 7-8), the Court cannot say that the ALJ failed to follow the proper legal standards in assessing her allegations of pain or that his findings were unsupported by substantial evidence.

Finally, Thompson's argument that the ALJ ignored evidence supporting her subjective reports of limitations (*see* Doc. 20 at 23-24) is without merit. Although Thompson suggests that the ALJ ignored her testimony "that her knees sometimes give out when she is walking" and her reports of the same to Dr. Altman (*id.*), the ALJ specifically discussed her statements on this point (*see* AR at 21) ("She relayed that her right knee gives out and buckles sometimes . . . .") before turning to the medical record and citing reasons to conclude that this testimony was inconsistent with the record (*see id.* at 21-22, 24). The same is also true of Thompson's testimony that her husband helps her with some activities of daily living (*see* Doc. 20 at 24)

(citing, *e.g.*, AR at 50-53), which the ALJ properly discussed (*see id.* at 21). Because these are not examples of the ALJ "pick[ing] and choos[ing]" from the record, citing "portions of evidence favorable to his position while ignoring other evidence," *cf. Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004), there is no legal error to address here.

In summary, Thompson has not met her burden to show that the ALJ mischaracterized the record, failed to address pertinent evidence, or otherwise failed to follow controlling legal standards in assessing her subjective symptom evidence. Nor has Thompson established that the ALJ's assessment was unsupported by substantial evidence. In this light, and in light of the "particular deference" owed to an ALJ's evaluations of subjective symptom evidence, *see White*, 287 F.3d at 910, the Court concludes that remand is not warranted on these grounds.

### E.  Determinations Regarding Past Relevant Work

After first determining Thompson's RFC, the ALJ was then required to determine the physical and mental demands of Thompson's past relevant work before determining whether she could meet those demands. *See, e.g.*, *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted). Thompson contends that the ALJ erred at the second phase of this analysis by failing to make findings as to the demands of her past relevant work. (Doc. 25 at 9).[11] She further argues that the ALJ erred at the third phase of this analysis by relying on VE testimony that was "not reliable." (*Id.*). The Commissioner, citing the hearing transcript and the ALJ's findings, disputes both contentions. (*See* Doc. 24 at 14-16).

At the hearing, the ALJ questioned Thompson at length about the demands of her past work as a personnel clerk. (AR at 41-42). Upon later questioning from the ALJ, the VE testified that Thompson had worked as "a[n] HR Assistant, which is Personnel Clerk, Your Honor:

---

[11] Although Thompson also originally argued that the ALJ "failed to make *any* inquiry into the demands of [her] past work" (Doc. 20 at 25), she has withdrawn that argument (*see* Doc. 25 at 9 & n.1).

209.362-026, sedentary, SVP 4." (*Id.* at 62). In his subsequent decision, the ALJ determined as follows:

> The claimant is capable of performing past relevant work as a personnel clerk. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> The impartial vocational expert testified that the claimant has past work as:
>
> - Personnel clerk, Dictionary of Occupational Titles (DOT) 209.362-026, sedentary, semiskilled, Specific Vocational Preparation (SVP) 4 . . . .
>
> The undersigned finds that this job constitutes past relevant work . . . . The claimant's past work as a personnel clerk was performed within the past 15 years as the record reflects that the claimant performed this work from 2007 to 2017. Moreover, she was able to learn the job because she performed it long enough (as the position has an SVP of 4, an individual can learn these positions in over three months up to and including six months). Lastly, the claimant performed the job at substantial gainful activity levels because she earned over $35,000 each year from 2008 through 2016.
>
> The vocational expert testified that a hypothetical person with the residual functional capacity, as the undersigned describes above, can perform the claimant's past work of personnel clerk as generally performed. Accordingly, in comparing the claimant's residual functional capacity with the physical demands of this work, the undersigned finds that the claimant is able to perform her past relevant work of personnel clerk as generally performed, as per SSR 82-61 and SSR 82-62.
>
> Pursuant to SSR 00-4p, the undersigned determines that the vocational expert's testimony is consistent with the information from the Dictionary of Occupational Titles.

(*Id.* at 26) (internal citations omitted).

This record reflects that the ALJ inquired into Thompson's past relevant work, described the VE's testimony as to the demands of that work, found that testimony to be consistent with the information from the Dictionary of Occupational Titles, and thus adopted the VE's testimony—including her testimony concerning the physical and mental demands of the personnel clerk position as it is generally performed—as his own findings. (*See id.*). These findings were sufficiently specific to meet the ALJ's burden at the second part of step four. *See Winfrey*, 92

F.3d at 205 (requiring "specific findings about the mental and physical demands of the jobs at issue," and noting that the ALJ may "rely on VE testimony in making the necessary findings" so long as he "make[s] the required findings on the record"); *cf. Hamadi v. Kijakazi*, No. 20-cv-00220 SCY, 2021 WL 3772181, at *17 (D.N.M. Aug. 25, 2021) (citing *Wells v. Colvin*, 727 F.3d 1061, 1075 (10th Cir. 2013)) (internal citation omitted) ("[T]he ALJ made a finding that the job of sales clerk is 'light work with a specific vocational preparation (SVP) rating of 2.' . . . [L]ight work means standing and walking for up to six hours. This finding is all that is required under the case law."). The fact that Thompson herself testified that her past job duties required greater physical demands than the VE recognized (*see* Doc. 25 at 9) does not mean that the ALJ erred in relying upon the VE's testimony concerning the manner in which the job is generally performed, or that the ALJ's determination as to the job demands was unsupported by substantial evidence. *See Hamadi*, 2021 WL 3772181, at *17 (citing *Andrade v. Sec'y of Health & Human Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993)) ("Even if the claimant cannot return to the work actually performed, the claimant is not disabled if he or she can perform past relevant work as it is generally performed in the national economy.").

As to the final phase of step four, Thompson argues that the VE's testimony concerning whether she could perform past work was "not reliable" because the VE initially did not understand a variation on a hypothetical question presented by Thompson's attorney at the hearing. (*See* Doc. 20 at 26) (citing AR at 65-70). This argument is entirely without merit. After some early confusion about the original and modified hypothetical questions and the jobs to which they applied, the ALJ repeated the questions, and the VE responded in a manner that satisfied both the ALJ and Thompson's own attorney. (*See* AR at 65-70). Thompson cites nothing suspect in the answer that the VE ultimately provided to her attorney's modified

hypothetical question (*see id.* at 69-70), and she cites no authority requiring remand under such circumstances. Therefore, Thompson has not met her burden to show that the ALJ's phase-three determination at step four failed to follow the correct legal standards or was not supported by substantial evidence.

## V.  CONCLUSION

Having conducted a thorough review of the entire administrative record, the Court concludes that the ALJ applied the correct legal standards and that her factual findings were supported by substantial evidence. Thompson's arguments to the contrary are not well-taken. Accordingly, Thompson's motion to remand (Doc. 20) is **DENIED**.

_____
**KEVIN R. SWEAZEA**
**UNITED STATES MAGISTRATE JUDGE**